JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Antoine Parker, appeals his conviction for felonious assault with firearm specifications and having a weapon while under disability. Appellant also challenges lay testimony offered at trial, the trial court's instruction to the jury, and the effectiveness of his trial counsel. For the reasons that follow, we affirm.
 {¶ 2} Appellant was indicted by the Cuyahoga Grand Jury as follows: count one, attempted murder; count two, felonious assault (knowingly cause serious physical harm); count three, felonious assault (knowingly cause or attempt to cause physical harm by means of a deadly weapon or dangerous ordnance); and count four, having a weapon while under disability. Counts one through three each contained one- and three-year firearm specifications.
 {¶ 3} Appellant waived his right to a jury trial on count four, having a weapon while under disability; the remaining counts, proceeded to a jury trial, commencing on August 2, 2005. At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal, which the trial court denied. The defense rested without presenting evidence and renewed its Crim.R. 29 motion, which was again denied.
 {¶ 4} The jury began its deliberations on August 3, 2005. The following day, August 4, 2005, the jury sent a note to the court expressing that it was "deadlocked" on count three and the firearm specifications. The court instructed the jury to continue with its deliberations. That same day, the jury returned a verdict of not guilty on count one, attempted murder, and guilty on counts two and three, felonious assault, with the accompanying firearm specifications. The court found appellant guilty of count four, having a weapon while under disability.
 {¶ 5} For the purpose of sentencing, the one- and three-year firearm specifications merged. Appellant was sentenced to three years on the firearm specification attendant to count two, to be served prior and consecutively to a two-year sentence on count two. Appellant was sentenced to a two-year term on count three and a one-year term on count four, to be served concurrently with each other and the sentence on count two. Thus, appellant was sentenced to a total five-year term.
 {¶ 6} The charges in this case stemmed from an incident that occurred in early October 2004 between appellant and Tamara Henderson. At the time of the incident, Tamara resided with her mother, Marilyn Henderson, and her three-year-old daughter. On the evening in question, appellant telephoned Tamara and asked if he could come to her house and talk to her; she consented. Appellant arrived at Tamara's house, and the two conversed for awhile inside and then subsequently went outside.
 {¶ 7} Tamara testified that while she and appellant were outside, their conversation was initially normal. Tamara explained that at some point appellant's demeanor abruptly changed and he grabbed his head and said "these voices." Tamara asked appellant if he was all right and he responded that he was. Appellant, however, took a couple of steps back from Tamara, grabbed his head again and said, "these voices, I'm tired of hearing this shit." Appellant then unzipped his front pocket, pulled out a gun and pointed it at Tamara's head.
 {¶ 8} Tamara testified that she ran towards appellant and grabbed the gun. They struggled for a few minutes, both of them with their hands on the gun. Tamara testified that while they were struggling, appellant was pulling the trigger. Tamara explained that one of the shots went off close to the right side of her face and that she suffered hearing loss in her right ear as a result. The third or fourth time appellant pulled the trigger, Tamara started bleeding from the face and pleaded with appellant, "you shot me, you shot me, please stop."
 {¶ 9} In addition to pointing the gun at her, Tamara testified that appellant punched her in the face, and she either tripped or was pushed and ended up on the ground, at which time appellant continued to punch her in the face. Tamara testified that she was screaming throughout the encounter.
 {¶ 10} Tamara's mother, Marilyn, testified that when she heard gunshots and Tamara's screams, she grabbed her gun and ran out to the backyard where she observed two people "tussling" on the ground. Marilyn was able to see that a man was holding Tamara down on the ground with his left hand and punching her with his right hand.
 {¶ 11} Shortly after Marilyn arrived on the scene, Tamara was able to break away from the man and run into the house. Marilyn testified that the man started walking towards the back door, so she fired four shots and he ran away. Marilyn admitted that she did not recognize the man and she never saw him with a gun.
 {¶ 12} Marilyn subsequently called the police, who arrived and took a description of appellant from Tamara. Tamara was transported by ambulance to the hospital, where she was treated for abrasions on her face and right shoulder and bruising/swelling to the area around her right eye. Tamara's medical records, which were entered into evidence without objection, referenced "powder debris" on her face.
 {¶ 13} The police recovered Marilyn's gun, four spent shells and four live rounds from her gun. A slug and a few bullet fragments were also discovered in the backyard. The police could not exclude the possibility that the bullet fragments were from Marilyn's gun.
 {¶ 14} While the police were conducting their investigation at the Hendersons' home, they received a call that a male matching appellant's description had arrived at the hospital with a gunshot wound. Officers therefore responded to the hospital and secured the suspect, who was appellant. Appellant was not tested for gunshot residue and no weapon was retrieved either from his person or his vehicle.
 {¶ 15} In his first assignment of error, appellant contends that the trial court erred in admitting lay opinion testimony. Specifically, appellant challenges the admission of Tamara's testimony relative to State's exhibit 7, a photograph depicting skin abrasions to her shoulder. In identifying the exhibit, Tamara testified that it showed her "upper shoulder and lower shoulder with bullet fragments." Defense counsel objected, but the court overruled the objection.
 {¶ 16} Appellant also challenges Tamara's testimony relative to State's exhibit 5, a photograph depicting bruising and swelling to her right eye. In so testifying, Tamara explained that the photograph depicted her "eye swollen shut and the powder on [her] face." Tamara explained that prior to her encounter with appellant she did not have the powder on her face. Defense counsel did not object to that testimony.
 {¶ 17} Marilyn also testified as to exhibit 5, stating that it showed gun powder on Tamara's face. Defense counsel objected; the trial court sustained the objection and struck the testimony.
 {¶ 18} Further, one of the investigating officers also testified as to exhibit 5, stating that it showed "what appear[ed] to be burn marks." Defense counsel objected, but the objection was overruled.
 {¶ 19} Initially, we note that, as to Marilyn's testimony regarding exhibit 5, the trial court sustained the defense's objection and struck the testimony. A charge to the jury to disregard evidence is sufficient to nullify the prejudicial effect of improper testimony. Suchy v. Moore (1972),29 Ohio St.2d 99; State v. Holt (1969), 17 Ohio St.2d 81. Absent evidence to the contrary, a jury is presumed to have followed the court's instruction and disregarded the evidence. Logan v. TheCleveland Ry. Co. (1923), 107 Ohio St. 211; State v. Dunkins
(1983), 10 Ohio App.3d 72. Thus, there was no error relative to Marilyn's testimony about exhibit 5.
 {¶ 20} Next, as to Tamara's testimony regarding exhibit 7 and the officer's testimony regarding exhibit 5, defense counsel did object and, as such, that testimony must be reviewed under an abuse of discretion standard. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. We will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 21} Evid.R. 702 governs expert testimony and provides as follows:
 {¶ 22} "A witness may testify as an expert if all of the following apply:
 {¶ 23} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 24} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 25} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 26} Evid.R. 701 governs lay opinion testimony and states:
 {¶ 27} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 28} Although appellant's assignment of error refers to the testimony as lay testimony, within the assignment of error appellant argues that Tamara did not have "any expertise in analyzing photographic evidence to determine the cause of physical injuries." (Emphasis added.) Appellant's argument is without merit. Tamara was not testifying as an expert witness. Rather, Tamara testified as a lay witness who had firsthand knowledge about her encounter with appellant. That testimony included her recount of appellant continually putting a gun to her head/face area. Tamara was qualified to identify herself in photographs and explain to the jury her appearance in the photographs and how that appearance came to be. Tamara's testimony was rationally based on her perceptions and was helpful in providing a clear understanding of her testimony. Thus, the trial court did not abuse its discretion in allowing Tamara's testimony.
 {¶ 29} Similarly, the investigating officer's lay testimony that Tamara appeared to have "burn marks" was based on his perceptions of her as he viewed her at the hospital that evening and was helpful in providing a clear understanding of his testimony. See, e.g., State v. Stout (1987), 42 Ohio App.3d 38,536 N.E.2d 42 (holding that a police officer may give a lay opinion that a stain depicted in a photograph appears to be blood where the opinion is based on the officer's perception and is helpful to a determination of a fact in issue).
 {¶ 30} In regard to Tamara's testimony about exhibit 5, counsel did not object. Absent a plain error, issues which are not addressed to the trial court at the time at which they could be remedied will generally not be reviewed. State v. Self
(1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446. In criminal cases, plain error is governed by Crim.R. 52(B) which states:
 {¶ 31} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 32} Under Crim.R. 52(B), plain error is obvious and prejudicial error which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings. The Supreme Court of Ohio has repeatedly admonished that this exception to the general rule is to be invoked reluctantly:
 {¶ 33} "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. See, also, State v. Thompson (1987),33 Ohio St.3d 1, 10, 514 N.E.2d 407.
 {¶ 34} As with Tamara's testimony relative to exhibit 7, we find no error. Again, Tamara was qualified to identify herself in photographs and explain to the jury her appearance in the photographs and how that appearance came to be. Tamara's testimony was rationally based on her perceptions and was helpful in providing a clear understanding of her testimony. Moreover, even if the trial court committed error, we do not find that this case presents exceptional circumstances requiring us to prevent a manifest miscarriage of justice.
 {¶ 35} Accordingly, appellant's first assignment of error is overruled.
 {¶ 36} In his second and third assignments of error, appellant contends that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence (third assignment) and his convictions were against the manifest weight of the evidence (second assignment) as it related to count three, felonious assault (knowingly cause or attempt to cause physical harm by means of a deadly weapon or dangerous ordnance) and count four, having a weapon while under disability, as well as the gun specifications attendant to counts two and three. In these assignments of error, appellant contends that the State failed to prove that he possessed and/or used a firearm.
 {¶ 37} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 38} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541
(Cook, J., concurring).
 {¶ 39} "[B]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA0064625.
 {¶ 40} When a defendant asserts that his conviction was against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340, 515 N.E.2d 1009. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 41} After reviewing the record and weighing the evidence and all reasonable inferences, we do not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 42} Tamara explained her encounter with appellant. She unequivocally testified that during that encounter, appellant had a gun that he repeatedly pointed at her head/face area. Moreover, Tamara testified that appellant pulled the trigger more than once. Tamara also testified that even as appellant assaulted her while she was on the ground, he pointed the gun at her again.
 {¶ 43} While Marilyn did not see appellant with a gun, she heard gunshots and Tamara's screams, prompting her to get her own gun and go outside.
 {¶ 44} We note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St. 2d 230,227 N.E.2d 212.
 {¶ 45} There was substantial evidence upon which the trier of fact based its verdict; we will not substitute our judgment for that of the jury. Tamara said there was a gun, Tamara's mother heard gunshots and appellant had ample opportunity to dispose of the weapon before he was taken into custody at the hospital.
 {¶ 46} Accordingly, appellant's conviction was not against the manifest weight of the evidence and, thus, his Crim.R. 29 claim of insufficiency of the evidence also fails, and his second and third assignments of error are overruled.
 {¶ 47} In his fourth assignment of error, appellant argues that the trial court erred in its instruction to the "deadlocked" jury. Specifically, appellant agues that the court's instruction deviated from the instruction approved by the Supreme Court of Ohio in State v. Howard (1989), 42 Ohio St.3d 18,[1] and had a coercive effect on the jury.
 {¶ 48} During deliberations, the jury sent the following note to the court:
 {¶ 49} "We need your advice on how to proceed. We have reached a verdict on two counts. We are deadlocked on the firearm specifications and count 3. Juror count is 9-3."
 {¶ 50} The court responded as follows:
 {¶ 51} "Thank you for your diligence in deliberations thus far. However, you must continue with your deliberations and seek to reach verdicts on the matters you indicate have proved difficult.
 {¶ 52} "I suggest you all take a break from deliberations. Perhaps a half hour or so, and resume with the hope you can reach a verdict once you resume deliberations."
 {¶ 53} The instruction given by the trial court in this case was not a Howard instruction.[2] The decision whether to give a supplemental instruction after the jury reports a "deadlock" rests within the sound discretion of the trial court.State v. Terrence (May 8, 1998), Hamilton App. No. C-960365, citing State v. Jones (Jan. 17, 1996), Hamilton App. No. C-940519; see, also, State v. Dennis, 79 Ohio St.3d 421,1997-Ohio-372, 683 N.E.2d 1096 (finding that, despite the jury's note that it had voted four times and was unable to reach a unanimous verdict, the jury was not deadlocked, since it had deliberated only a few hours before it sent its note to the court).
 {¶ 54} Thus, the trial court was not required upon the first sign of difficulty in the jury's deliberations to give a Howard
instruction. Moreover, the court's instruction to the jury was not coercive. The court instructed the jury to "seek to reach verdicts," "take a break from deliberations," and "resume with the hope you can reach a verdict * * *." The jurors were polled after their verdict was announced and each juror indicated that the verdict reflected their vote.
 {¶ 55} Based upon the aforementioned, appellant's fourth assignment of error is overruled.
 {¶ 56} In his fifth and final assignment of error, appellant argues that his trial counsel was ineffective by failing to object to the trial court's supplemental instruction given to the "deadlocked" jury.
 {¶ 57} Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying the two-pronged test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. Strickland requires that the defendant show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687-696. In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id.; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 58} For the reasons already discussed in addressing the fourth assignment of error, we find this assignment of error without merit. Namely, the trial court was not required to give aHoward instruction and the instruction it gave was not coercive. Each juror indicated that the verdict reflected their vote. Thus, appellant has failed to demonstrate that his counsel's failure to object to the instruction was deficient and that the outcome of the trial would have been different had his counsel objected.
 {¶ 59} Accordingly, appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J., and Sean C. Gallagher, J.,concur.
[1] Howard provides at paragraph two of the syllabus as follows:
"In place of the traditional Allen [v. United States
(1896), 164 U.S. 492]charge, we approve the following supplemental instruction: `The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.'"
[2] Defense counsel did not request a Howard instruction and did not object to the instruction given by the trial court.