JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Aliyu Omar appeals from his convictions after a trial to the bench on two counts of gross sexual imposition.
 {¶ 2} Appellant asserts his convictions are against the manifest weight of the evidence. Since a review of the record does not support his assertion, his convictions are affirmed.
 {¶ 3} The record reflects appellant is a citizen of Ghana who first came to this country in 1979 to participate in a two-year work-related training program. Appellant eventually returned in 1983 to attend college in Ohio. Although he never completed his degree program, appellant began a career in religious teaching in 1985, married in 1991, and remained in this country; he did not receive legal immigration status until 1997.
 {¶ 4} The woman appellant married, L, was a divorcee.[1] L had two grown sons, one of whom had a wife of his own, and two younger children. Appellant met L when she enrolled the two younger children in the Islamic school in which he taught. L's youngest child, her daughter, N, was only three years old when L married appellant.[2] Since N had little contact with her biological father, appellant held the role of her male parent.
 {¶ 5} At the time of her marriage to appellant, L owned a duplex located on Trafalgar Avenue in Cleveland In 1995, L rented out the downstairs portion and utilized for her own family the upstairs portion. Her oldest son lived with his wife in one of the bedrooms, while L, appellant, and L's two younger children shared another. N and her brother each had small beds in the room; N, however, often sought comfort in the parental bed. Thus, it was not unusual for her to sleep there.
 {¶ 6} From the testimony of the state's witnesses at appellant's trial, it can be gleaned the incidents which resulted in appellant's convictions occurred sometime in 1996 or 1997. N recalled being in the parental bed for a nap. She was alone with appellant, lying on her back, when she "felt him in [her] shirt." On the first occasion, appellant's hand went under the T-shirt N was wearing and his index finger and middle finger were placed on either side of her nipple. Appellant held the nipple with those two fingers while he brushed his thumb against it in a circling motion.
 {¶ 7} N lay still, because she "didn't know what to do." After approximately a minute, the touching stopped, and N felt "nasty" about the episode, so she remained silent. Appellant thereafter repeated this same activity "about two other" times, but his sexual assaults upon N did not stop with the touching of her breast; rather, he instituted another type.
 {¶ 8} On that occasion, N again lay on her back on the parental bed when she felt one of appellant's fingers enter her clothing; she "partially" opened her eyes so she could see what he was doing. She covertly watched as he placed his index finger "between her legs," made contact with the area just above her clitorus, and moved his finger in an "up and down" motion. Once again, the episode lasted only "about a minute or so," and N did not know how to respond. She felt "uncomfortable" and "afraid;" after appellant left her alone, she began to feel as though she somehow must have "provoked" appellant's behavior.
 {¶ 9} Shortly after that incident, L, appellant, and the two younger children moved to the lower portion of the house in order that L's older son and his family could have the upper portion to themselves. N's relationship with appellant began to change. Although N accorded appellant respect in the school setting as the school's principal, L noticed N avoided appellant at home. Additionally, N wanted a lock for her bedroom door. Eventually, N began to challenge appellant's authority; she especially resented his lectures on appropriate female behavior.
 {¶ 10} In late spring 2002, L left Cleveland for a week-long visit to New Mexico. While she was away, N spent much of her time with her older brother's family. She ultimately confided in her sister-in-law that appellant had "messed with" her. N's sister-in-law encouraged her to tell L.
 {¶ 11} L believed her daughter's disclosure, since N's account was similar to her own experience of appellant's preferred type of sexual contact. In view of the family's religiousness and appellant's significant status in the Islamic community, L took N first to the other leaders of their mosque to request advice. Upon hearing N's description of appellant's actions, the men decided N should confront appellant about the matter in their presence. The confrontation took place in L's home. Only after appellant denied N's accusations in front of the mosque leaders did L contact an Islamic social worker, who, in turn, contacted a police detective who was also a member of the mosque.
 {¶ 12} Appellant ultimately was charged with two counts of gross sexual imposition upon a minor, R.C. 2907.05.[3]
Appellant executed a waiver of his right to jury trial; thus, his case was tried to the bench. The state presented the testimony of N, L, and the detective. Appellant elected to testify in his own behalf and also presented the testimony of several character witnesses.
 {¶ 13} Thereafter, setting forth its analysis of the evidence in open court, the trial court found appellant guilty on both counts. Appellant eventually received a sentence of concurrent terms of three years incarceration for each conviction.
 {¶ 14} Appellant presents the following single assignment of error for this court's review:
 {¶ 15} "I. Defendant-appellant's convictions were contrary to the manifest weight of the evidence."
 {¶ 16} Appellant asserts that since N's testimony was uncorroborated by any physical evidence, the weight of the evidence supports a conclusion her story was fabricated. Appellant further asserts some comments made by the trial court during his sentencing hearing provide proof the trial court improperly weighed one defense witness' testimony when it determined his guilt. This court disagrees.
 {¶ 17} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the "entire record" that in resolving conflicts in the evidence, the trier-of-fact "clearly lost its way" and created a "manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172. This court thus remains mindful that matters of credibility are reserved primarily for the trier-of-fact. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} The trial court made several references to the relative credibility of the evidence as the basis for its determination of appellant's guilt. After a lengthy preamble, the court stated in pertinent part as follows:
 {¶ 19} "The phrase that comes to mind * * * about the role this defendant had in his community as being a religious leader, a teacher, a principal, and stepfather, in this case is[`]wolves in sheep's clothing.['] * * * [H]e stands before the court to be judged only on the evidence presented in the case * * * and the court must look neutrally at all the evidence that's been presented.
 {¶ 20} "The defendant has blamed the child * * * and suggested that the court should believe that a young girl of Muslim faith would make these charges against someone because she no longer wanted to abide by a Muslim stepfather's rule and the dictates of his religious beliefs. I find this preposterous considering * * * that the child went before the Muslim council, which was a council made up primarily of men, to make her charges when the worst punishment * * * he could have received had he been found guilty by the council was a flogging * * *.
 {¶ 21} "* * * The defendant was correct in stating that nobody here knows what happened except for the two people who were involved. * * *
 {¶ 22} "Crimes of this sort are committed often privately and deliberately out of sight of others. * * *
 {¶ 23} "The court has had the opportunity to observe the testimony of both of those persons, to hear their words, to observe their body language and demeanor, to hear the inflection and tones of voices and to watch them throughout the case. The defendant's testimony was riddled with inconsistencies, and the court finds it not to be credible. * * * Given all of the testimony and all of the evidence presented and the court's opportunity to witness that testimony, as I have listened to the evidence, I am firmly convinced without any question [of the defendant's guilt] * * *."
 {¶ 24} The trial court's comments thus demonstrate it exercised its prerogative to believe N's account of the incidents. The transcript makes it apparent that it was difficult for N to relive these incidents, and her account was corroborated not only by the testimony of her mother, but also, in certain respects, by appellant's testimony.
 {¶ 25} Appellant's witnesses' testimony seemed rehearsed in contrast to that of the state's witnesses; every one of the defense witnesses characterized appellant's reputation as "impeccable." Moreover, as noted by the trial court, appellant's explanations for N's accusations became more far-fetched the longer he testified.
 {¶ 26} Appellant suggests that the trial court made certain comments during his sentencing hearing that undermine the legitimacy of his convictions. A review of the challenged remarks indicate the trial court believed appellant had attempted to sway its impartiality by summoning a member of the city cabinet as a defense witness. Those same remarks made it clear, however, that if such an attempt had been made, it remained unsuccessful. Consequently, appellant's suggestion is rejected.
 {¶ 27} Since the record, therefore, supports the trial court's assessment of the evidence, appellant's assignment of error is overruled. State v. Fountain, Cuyahoga App. No. 81833, 2003-Ohio-1961; State v. Edwards, Cuyahoga App. No. 81351, 2003-Ohio-998; State v. Glass, Cuyahoga App. No. 81607, 2003-Ohio-879.
 {¶ 28} Appellant's convictions are affirmed.
Michael J. Corrigan, A.J., and Ann Dyke, J., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
[1] Pursuant to the policy of this court, the identity of the victim is shielded; thus, in this opinion, she and her mother are referred to by their initials.
[2] N was born on August 27, 1988.
[3] Originally, the first count of the indictment against appellant charged him with the offense of rape; the state amended the charge to gross sexual imposition prior to appellant's trial.