JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant David Menefee appeals from his convictions after a jury found him guilty of rape, gross sexual imposition and kidnapping.
 {¶ 2} Menefee asserts his convictions are unsupported by the manifest weight of the evidence. He further asserts the trial court should have granted his motion for a mistrial due to the prosecutor's failure to provide him with a "statement" he made to a police detective.
 {¶ 3} Upon a review of the record, however, this court cannot agree with either of Menefee's assertions. Consequently, his convictions are affirmed.
 {¶ 4} According to the record, Menefee, a man in his sixties, lived with his wife on Gay Avenue in the city of Cleveland. The couple additionally owned the house directly behind their home, which was located on Way Avenue.
 {¶ 5} In November, 2004, Menefee and his wife agreed to rent the Way Avenue house to the twenty-four-year-old female victim, J.[1] At that time, J cohabited with a man named Zane. Zane was not only the father of J's five-year-old child, but he was also a friend to Menefee's son. Zane, moreover, had become a sort of protegee of Menefee's; Menefee taught him trades such as roofing and carpentry.
 {¶ 6} After a few months of living in the house, J sent her son to visit relatives in California. Shortly thereafter, she and Zane had an argument, which made him decide to live with his mother. By the beginning of March, 2005, J was not only living alone, but was in the process of moving out of the house.
 {¶ 7} On the morning of March 3, 2005, J telephoned Menefee in an effort to locate one of his grandsons. She attempted to explain that his grandson had promised to deliver her furniture to a buyer, but she suffered from laryngitis. Menefee indicated he could not understand what she wanted and would stop by the house. Upon Menefee's arrival, J admitted him into the living room, showed him her list of the furniture that needed transport, and sat down on her favorite couch.
 {¶ 8} According to J's testimony, Menefee hardly glanced at the list. Instead, he "walked over and stood over" her and asked her how old she was. He then "said, `You know what? It's been a long time since I had some young pussy." Although J tried to deflect his comment, he "reached over to try to kiss" her.
 {¶ 9} J put out her hand to stop him. Menefee "grabbed [her] shoulder[,] pushed [her] down into the couch," and climbed onto her, placing "both of his knees on [her] thighs to hold [her] down." He then leaned his head down to begin biting her right nipple through her clothing.
 {¶ 10} J testified that her attempts to wriggle out from under Menefee proved unsuccessful; his position and his strength, combined with the aged condition of the couch, prevented her from lifting up enough to push him away. Menefee put his forearm onto her neck and, with his other hand, wrestled down the elastic waistband of her pants. He placed his erect penis into her vagina, and despite the fact that she was crying for him to stop, ejaculated.
 {¶ 11} When he finished, "he got up * * * told [her] didn't nobody have to know anything," and went into her bathroom to clean himself. He continued speaking as he did so, indicating that she should "[q]uit crying"; she had nothing to "worry about" because "[h]e was too old to get [her] pregnant." Before he left, he told her he would return later to "take care of" her.
 {¶ 12} J waited until she was sure Menefee was gone. Her first thought was to seek support, so she drove to Zane's place of work. Zane's employer paged him; when he arrived at "the front desk * * *, [J] was standing there. She was crying, snot was running down her face and everything." She seemed to be "shaking like in shock or something * * *."
 {¶ 13} Zane eventually took J to the hospital where rape tests were conducted. Later, when Menefee was detained for police investigation of the incident, he offered an oral statement in which he claimed the sexual encounter with J was consensual. His testimony at trial was to the same effect.
 {¶ 14} Menefee was indicted on four counts, viz., rape, gross sexual imposition, kidnapping, and aggravated burglary. Three of the counts carried a notice of prior conviction.[2]
Menefee's case proceeded to a jury trial.
 {¶ 15} After considering the evidence, the jury found Menefee guilty of rape, gross sexual imposition, and kidnapping, but acquitted him of the charge of aggravated burglary. The trial court sentenced him to serve a total term of incarceration of six years for his convictions.
 {¶ 16} Menefee challenges his convictions with the following two assignments of error:
 {¶ 17} "I. The verdict was against the manifest weight of the evidence.
 {¶ 18} "II. The trial court erred and abused its discretion in denying appellant's motion for a mistrial after the state elicited testimony from appellant regarding a written statement that had not been presented to the defense in discovery."
 {¶ 19} Menefee first argues that his convictions should be reversed because he gave a more credible version of the incident than J. This court disagrees.
 {¶ 20} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the "entire record" that in resolving conflicts in the evidence, the jury "clearly lost its way" and created a "manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172. This court thus remains mindful that matters of credibility are reserved primarily for the jury. State v. DeHass (1976),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} A review of the record makes it apparent that even after nearly a year, it was difficult for J to testify and thereby relive the experience. Menefee suggested to no motive for her to lie about the incident. Her testimony, moreover, was corroborated by Zane's and by the physical evidence.
 {¶ 22} Even Menefee's testimony corroborated J's in many respects. Menefee admitted he knew J was alone in the house, admitted she called him that day about her impending move to California, and admitted he had "wanted" J for some time. Moreover, some of Menefee's comments about a photograph he had seen of J's mother demonstrated that, in spite of his age, he retained an unusual interest in sexual matters. Finally, he repeated himself several times, as if it were a refrain, that he had done "no more than the next man would do" in having sex with J.
 {¶ 23} The record, therefore, supports the jury's assessment that J provided the true version of the incident. Accordingly, Menefee's first assignment of error is overruled. State v.Omar, Cuyahoga App. No. 82794, 2004-Ohio-366; State v.Fountain, Cuyahoga App. No. 81833, 2003-Ohio-1961.
 {¶ 24} Menefee next challenges his convictions on the basis of a problem that occurred during trial.
 {¶ 25} During his direct testimony, Menefee indicated that upon hearing of J's accusation, he went to the local police station to explain "what happened," i.e., that the sexual encounter with J had been consensual. He stated he was told that nothing could be resolved until the victim "came forward," so he returned home.
 {¶ 26} On cross-examination, Menefee repeated that when he discovered J told Zane the sexual encounter was "rape," he went to the police station, where he informed the officer at the desk that he "came because the lady said [he] raped her and [he] did not." At that point, the prosecutor began questioning Menefee about his "desire to let the police know about [his] side of the story." The prosecutor asked Menefee if he spoke "that very night" with the detective.
 {¶ 27} Menefee responded that he wasn't sure of precisely when the encounter with the detective occurred, but he remembered the detective asked if he wanted to make a statement, and he "told him no. Also and he said, `Well, if you ain't going to make the statement, on the big part of the paper, make an `X' here.'" Menefee referred to a portion of a standard police form which indicates that the suspect declined to offer a written statement. The trial court overruled defense counsel's objection to this testimony.
 {¶ 28} At the conclusion of the cross-examination, Menefee's defense counsel moved for a mistrial. Counsel stated that he was unaware Menefee had placed a mark on a form, because the prosecutor failed to provide the information during discovery. Counsel further argued that the testimony compromised his client's privilege against self-incrimination.
 {¶ 29} The trial court considered both aspects of the matter at length before overruling the motion. The court indicated that, even assuming the state should have considered the form a "statement" subject to discovery by the defense, the state's failure to provide it was not "prejudicial" error, because the state had not introduced the "statement." The court reasoned that, once Menefee testified on direct examination he went to the police to make a full account of what happened, the entire matter was "ripe for cross-examination."
 {¶ 30} The granting or denying of a motion for a mistrial rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, 182. An appellate court will not disturb the trial court's decision absent a demonstration the defendant suffered material prejudice. State v. Stout (1987),42 Ohio App.3d 38. Unless a defendant's substantial rights are affected, a mistrial should not be ordered in a criminal case merely because some error intervened. Id.
 {¶ 31} In this case, during his direct testimony, Menefee relinquished his privilege against self-incrimination by bringing up his affirmative action; he stated he went to the police station to give an oral statement and to explain his side of the story. When, during his cross-examination, he then additionally volunteered, however, that upon being given the opportunity to provide a written statement he refused, the state's failure to provide the form to the defense during discovery became moot. Menefee himself became responsible if any prejudice occurred.State v. Brown (1988), 38 Ohio St.3d 305, 312.
 {¶ 32} Under the circumstances, the trial court did not abuse its discretion in permitting the prosecutor to test Menefee's credibility by exploring the juxtaposition. The record reflects the trial court carefully explored the ramifications before rendering its decision to deny Menefee's motion for a mistrial.State v. Hubbard, Cuyahoga App. No. 83384, 2004-Ohio-4627. Therefore, this court will not disturb its decision.
 {¶ 33} Menefee's second assignment of error, accordingly, also is overruled.
 {¶ 34} His convictions are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Kilbane, J. concur.
[1] Pursuant to this court's policy of protecting her privacy, the victim is referred to only by an initial.
[2] These counts also each carried a repeat violent offender specification, which the trial court subsequently dismissed.